[Civ. No. 4728. First Appellate District, Division Two.—February 15, 1924.]

In the Matter of the Estate of ELLEN HANLON, Deceased. AGNES BERG, Respondent, v. MAMIE LUDING-HOUSE, Appellant.

[1] WILLS—MENTAL INCOMPETENCY—EVIDENCE.—In this contest of will before probate, the evidence as to the age of the decedent, the condition of her health, and the medicines which it had been necessary to give her did not justify a finding ·that at the time of the execution of the will the decedent was mentally incompetent to make, execute, or subscribe a will.

[2] ID.—UNNATURAL WILL—FAVORING OF CHILD—EVIDENCE.—The fact that the decedent left eight children and that the major portion of the estate was left to one daughter did not constitute proof that the will was unnatural, where the evidence showed that for a period of four years immediately preceding her death she was the inmate of the home of said daughter, and that if the entire estate had been left to said daughter, not by way of gift but merely by way of payment, she would be receiving a compensation less than the charge of ordinary hospitals.

[3] ID.—UNDUE INFLUENCE — OPPORTUNITY — EVIDENCE. — The mere circumstance that said daughter was in a position to exercise undue influence over decedent, standing alone, does not warrant a

---

1. Generally as to what constitutes capacity or incapacity to make a will, notes, 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.

jury or a court in making a finding that the will of the mother, perfectly valid on its face, is invalid because the same was obtained by the exercise of undue influence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. T. Eckoff for Appellant.

Clayton H. Garvey, John D. Whitton, Lee Shapiro and Alex. Sherriffs for Respondent.

STURTEVANT, J.—After the death of Ellen Hanlon, when her purported will was offered for probate, one of her daughters, Agnes Berg, filed an objection and protest against the will being admitted to probate. Thereafter a trial of the contest was had and a judgment went for the contestant and the proponent has appealed under section 953a of the Code of Civil Procedure.

In her attack the contestant specified two grounds; one that at the time of the execution of the will the decedent was mentally incompetent to make, execute or subscribe a will; and, second, that at the time of the execution of the will the decedent was acting under the undue influence of various persons, and in particular Mamie Ludinghouse, another married daughter.

In her opening brief the appellant made the point that there was no conflict in the testimony and that the testimony adduced at the trial was such that it fails to support the judgment on either theory. [1] In her reply to this point the respondent sets forth by question and answer the testimony which she claims supports the judgment on the basis of undue influence. We shall take up these two theories separately in the order stated in the respondent's brief.

As to the first theory the respondent claims that the evidence showed "that Ellen Hanlon was feeble in health, suffering under disease, aged and infirm, and that for the past year of her life at least that she was sinking rapidly both physically and mentally; that for some years prior to her death she

65 Cal. App.—38

was suffering from a fatal malady, namely, a tumor; that she was being constantly doped with opiates to relieve her terrible pain and suffering, and that the doses were given stronger and oftener as she got worse; and that at no time was she free from the effect of these opiates.'' It was further testified that the decedent was of unsound mind and that she did not understand the act she was doing; that her answers were not responsive to the questions asked of her; that at times she had no mind at all and did not know anything, and that her mind rambled and wandered. That her memory was gone; that she was mentally incompetent, and that the morphine was removed from her reach for fear she would commit suicide, and that Mamie Ludinghouse had herself admitted that ''her mother was off and was not responsible for anything she did.'' And the respondent claims that evidence was introduced showing that the statements of the testatrix proved that her feelings toward her children, particularly to her son Mark, were far different from the feeling represented by the will.

Looking back over the summary just stated there was no evidence that during the last year of her life the decedent was sinking rapidly mentally, nor that she was being constantly doped with opiates, nor that the doses were given stronger and oftener as she got worse, nor that the increased doses were given prior to the date that the will was made. Neither was there testimony that the decedent was at no time free from the effects of opiates, but, on the other hand, the opiates referred to consisted of morphine sulphate in one-quarter grain tablets, which were administered one tablet at a time three times daily, except when the patient was in a spasm of pain, which event occurred comparatively seldom. A prescription for one hundred tablets was filled September 13, 1920, and the will was made three days later; the next prescription was filled October 26, 1920. When the patient was under the influence of the opiate there were times when she had no mind at all and did not know anything, and her mind rambled and wandered and her memory was gone and she was mentally incompetent. When she was not under the influence of the opiate there is no testimony of any witness that such condition existed. The statement that the morphine was removed from the decedent's reach for fear she would commit suicide did not en-

lighten the jury as to whose fear was considered, nor what the fear was based on. The admission of Mamie Luding-house that her mother was off and not responsible for any-thing she did was possibly competent cross-examination of Mrs. Ludinghouse, but the statement was not testified to in any manner showing that Mrs. Ludinghouse had made such a remark as meaning otherwise than that such was her mother's condition when under the influence of the opiate.

During the several years she was afflicted the record makes it clear that the decedent did at times suffer severely; furthermore, that at some of those times opiates were given in large doses; and that while the patient was under the influence of the large doses of the opiates that her mind was greatly disturbed, but in this connection there is not a par-ticle of evidence in the record that on the date the de-cedent made her will, or on any date immediately prior thereto, she had suffered a spasm of pain or had taken any extra or excessive doses of the opiates.

Each side called several witnesses as intimate acquaintances and propounded to the witnesses a question asking the opinion of the witness as to the mental sanity of the de-cedent. No one of the witnesses called by the respondent gave a frank, free, full, direct answer to the question; but each one sought to limit, modify or vary his answer. After each one had so answered, no one of the witnesses proceeded to state any fact or facts showing his or her answer to have any support as being based on any occurrence which would tend in the least to justify such an opinion. Neither in connec-tion with the foregoing opinion evidence, nor in the other evidence introduced, was there a single trace of evidence to the effect that the decedent was ever at any time a fool, or that she showed any traces of any kind of insanity. Her doctor testified that she showed traces of senility. As the decedent was at the time seventy-seven years of age, the doc-tor's testimony went no further than to state in medical language that the decedent was getting old.

[2] In connection with this part of the case, the respond-ent iterates and reiterates that the will of the decedent was unnatural. To what extent it was unnatural the respondent does not enlighten us. The decedent left an estate consisting of seven thousand dollars, and she left eight children. For a period of four years immediately preceding her death she

was an inmate of the home of Mrs. Ludinghouse, we may say, the sole devisee. During that time she had a small income and during the same period she was incurring the expenses of doctors, medicines, nurses, etc. There is evidence in the record that by reason of the long sickness the patient had become afflicted with malodorous sores. No other child appears to have asked for or sought the privilege of caring for the deceased. To what extent, during her lifetime, she paid Mrs. Ludinghouse for her care and treatment does not appear in the record in any accurate set of figures. Had the whole estate been left and devised to Mrs. Ludinghouse, not by way of gift but merely by way of payment, it would then appear that Mrs. Ludinghouse would be receiving a compensation less than the charge of ordinary hospitals. However, the will left to Mark Hanlon the sum of forty dollars per month during the period of, and until the settlement of, the estate of the decedent, not exceeding two years. This bequest, together with the costs of administration, reduced the estate to a figure of five thousand dollars or thereabouts, and it is further made to appear that it was not unnatural that decedent should have left to Mrs. Ludinghouse the bulk of her estate. Mark Hanlon, a son, had for some years received gratuities from his mother. Some witnesses said he was a drunk, other witnesses said that he was suffering from tuberculosis. His mother, by her will, left him forty dollars per month for a limited period and stated as she did so that when he learned that the remittance was to continue for only a short time that he would then make arrangements to care for himself. Considering all of the facts, we are unable to say that the will was in the least unnatural.

Dr. Dannebaum declined to testify that he visited the patient on September 16, 1920, the date the will was made. No witness testified that on that date the decedent suffered from any paroxysm of pain; no witness gave any evidence to the effect that on that particular date the decedent was mentally incompetent.

[3] Passing to the second ground of the contest it will suffice to remark that the evidence does not purport to disclose a single word or a single act on the part of Mamie Ludinghouse showing the exercise of, or an attempt to exercise, any undue influence over the mind of her mother. The utmost that can be said in that connection is that the

evidence shows that she was in a position to exercise undue influence. But that circumstance standing alone does not warrant a jury or a court in making a finding that a will, perfectly valid on its face, is invalid because the same was obtained by the exercise of undue influence. We note that counsel call attention to the fact that Mrs. Ludinghouse did, on the date that the will was executed and for some time prior thereto, stand in the position of a fiduciary agent of her mother, and that by the terms of the will she received a gift from her mother during the term of that relationship, and that counsel thereupon predicate the claim that it will be presumed that the gift was obtained under undue influence. Not conceding that such is the rule of law in this state, nevertheless such presumption would last only until direct evidence was given on the subject. That direct evidence was given by Mrs. Ludinghouse. She tendered herself as a witness and was subjected to a direct examination and cross-examination. After she had been fully examined not a trace of undue influence was elicited.

The judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.